UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15cv69-FDW

| | |
|---|---|
| JAMES L. THOMPSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| KEITH WHITNER, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court upon James L. Thompson's pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 4.).

## I.    BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who was convicted of possession of cocaine on March 19, 2012, after a jury trial in Mecklenburg County Superior Court.[1] The North Carolina Court of Appeals summarized the State's evidence:

> On the evening of 13 August 2009, four officers of the Charlotte–Mecklenburg Police Department were driving around in an unmarked sport utility vehicle ("SUV") through the Belmont community in northeast Charlotte in order to observe "street level narcotic sales and possession while in an undercover capacity." The four officers included Matthew Zastrow, Justin Davies, Shawn Strayer, and Lance Fusco.
>
> At approximately 10:30 p.m., the officers saw defendant at a convenience store at the intersection of Seigle Avenue and East 17th Street. Officer Zastrow testified that defendant was the only individual standing outside of the convenience store. Defendant was standing "at this second window along the closed side of the

---

[1] Petitioner's first trial in August 2011 ended in a mistrial. State v. Thompson, 741 S.E.2d 514, 2013 WL 1619393 at *1 (N.C. Ct. App. Apr. 16, 2013) (unpublished).

1

business that's next to the convenient [sic] store." Officer Zastrow testified that he was about 50 feet from defendant when he saw defendant lean down and place something along the windowsill of the closed business. As the officers' vehicle approached defendant, defendant yelled "hey" at the officers.

Officer Davies, who was the driver of the unmarked SUV, had his window down and responded to defendant by saying, "what's up?" Officer Davies pulled over to a corner of the intersection. Defendant approached the driver's side of the SUV and engaged Officer Davies in conversation:

> As we stopped at the corner, he came up to the window and said, what are you looking for or something like that. What are you looking for or what do you want? At that point I said, you know, whatever, you know. And he, you know, proceeded asking if we were looking for some weed. I said, yeah, sure. And he stated that he just bought some weed from a guy on Allen Street down the block and he could get us some good stuff, but he didn't have a way to contact them. He wanted to use our cell phones. We said we didn't have any cell phones at the time.

The conversation ended and defendant walked back to the windowsill where he had first been seen.

Officers Zastrow, Strayer, and Fusco exited the SUV and walked toward defendant. Officers Fusco and Strayer detained defendant while Officer Zastrow "immediately walked to that window ledge where [he] had seen [defendant] standing and yelling in our view." Officer Zastrow saw an object on the same windowsill and in the same location Officer Zastrow had earlier witnessed defendant place an object. They seized the object. It was a small piece of paper, folded in half, and containing a rock of crack cocaine—which was later weighed and determined to be approximately 0.3 grams.

Defendant was arrested, placed in a police car, and transported to a parking lot down the road from the convenience store. Defendant asked Officer Strayer what he was being charged with and Officer Strayer replied, "you're being charged with the crack rock we found on the ledge." Defendant responded, "oh, some dude just gave me that crack[.]"

At trial, defendant testified in his own defense. Defendant stated that when he first arrived at the convenience store, he was "with this dude, I don't know his real name, tall dude. We call him Red in the neighborhood." Defendant testified that "Red" walked away. Defendant denied being the only person on the side of the convenience store on the night of 13 August 2009 and denied putting cocaine on the windowsill. However, defendant also testified that when he first came into contact with the officers, he was by himself—"Outside the convenient [sic] store right there I'm by myself, right there by myself."

State v. Thompson, 741 S.E.2d 514, 2013 WL 1619393 at *1-2 (N.C. Ct. App. Apr. 16, 2013) (unpublished).

Upon his conviction for possession of cocaine, Petitioner pled guilty to attaining habitual felon status and admitted to the existence of an aggravating factor—that he was found to be in willful violation of probation during the ten year period prior to the commission of the offense for which he had been found guilty. Id. at *3. The trial court found that Petitioner had five criminal history points and was a prior record level III. Id. The court sentenced Petitioner to an active sentence of 116 to 149 months.

The North Carolina Court of Appeals found "no error" on direct appeal. Id. at *5. The North Carolina Supreme Court thereafter denied discretionary review. State v. Thompson, 747 S.E.2d 556 (N.C. Aug. 27, 2013) (mem).

Petitioner filed a pro se motion for appropriate relief ("MAR"), dated December 2, 2013, in Mecklenburg County Superior Court. (Resp't's Ex. 7, Doc. No. 5-8.) It was denied on February 18, 2014. (Order Den. MAR, Resp't's Exhibit 8, Doc. No. 5-9.) Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals (Resp't's Exhibit 9; Doc. No. 5-10), which was denied on May 15, 2014. (Order Den. Cert. Pet., Resp't's Ex. 11; Doc. No. 5-12.)

Petitioner filed a second pro se MAR, dated September 9, 2014, in Mecklenburg County Superior Court. (Resp't's Ex. 12, Doc. No. 5-13.) The court summarily denied the second MAR on October 17, 2014, holding that it "fail[ed] to state a claim upon which relief may be granted" and was "without merit under N.C. Gen. Stat. § 15A-1419(a)(3)." (Order Den. MAR 42, Doc. No. 1.) Petitioner subsequently filed a second pro se certiorari petition in the North Carolina Court of Appeals (Resp't's Ex. 13, Doc. No. 5-14), which was denied on December 2, 2014.

3

The instant federal habeas Petition was received by the district court Clerk's office on February 11, 2015.[2] After conducting an initial review required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, this Court ordered Respondent to file a response to the Petition. Respondent filed a Response (Doc. No. 3), Motion for Summary Judgment (Doc. No. 4), and Memorandum of Support (Doc. No. 5) with exhibits. Petitioner subsequently filed a Response to the Motion for Summary Judgment. (Doc. No. 7.)

## II.     STANDARD OF REVIEW

### A.  Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

### B.  Procedural Default

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2244 and §§ 2253-2254. Breard v. Pruett, 134 F.3d 615, 618 (4th Cir. 1998). The claims

---

[2] Petitioner signed and certified, under penalty of perjury, that he placed the instant Petition in the prison mail system on March 4, 2015. (Pet. 15, Doc. No. 1.)

raised in the instant Petition were raised in Petitioner's September 9, 2014 MAR. (Resp't's Ex. 12, Doc. No. 5-13.) Fairly read, the state court's summary denial of the MAR was an adjudication on the merits and, in the alternative, application of a procedural bar. (October 17, 2014 Order Den. MAR 42, Doc. No. 1) (holding that the MAR "fail[ed] to state a claim upon which relief may be granted" and was "without merit under N.C. Gen. Stat. § 15A-1419(a)(3)").

The doctrine of procedural bar is a limitation on the scope of federal habeas review. See Breard, 134 F.3d at 619. "If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).

A federal habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998). To show cause, a petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," Murray v. Carrier, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding," Roach v. Angelone, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, [a p]etitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000) (citing Coleman, 501 U.S. at 750). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. "Actual innocence," however, requires "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

Petitioner claims that trial counsel was ineffective at sentencing for failing to: (a) object to an error in Petitioner's prior record level calculation; and (b) object to the trial court's determination that an aggravated sentence was justified. Respondent contends that these claims are procedurally defaulted. (Mem. in Support of Summ. J. Mot. 11-12, Doc. No. 5.)

Under North Carolina law, claims raised in an MAR that could have been raised on direct appeal, but were not, are subject to dismissal. N.C. Gen. Stat. § 15A–1419(a)(3). The Fourth Circuit has held that § 15A–1419 (a)(3) is an independent and adequate state procedural rule. See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) ("We have consistently held that § 15A–1419(a)(3) is an independent and adequate state ground for purposes of procedural default."); McCarver, 221 F.3d at 588. Thus, the state court's citation of § 15A-1419(a)(3) (October 17, 2014 Order Den. MAR, supra, at 42) constitutes an express reliance upon an adequate and independent state procedural rule as a basis for dismissing Petitioner's MAR.

By relying on § 15A-1419(a)(3), the state court necessarily found that Petitioner could have raised his ineffective assistance of trial counsel claims on direct appeal. Factual findings made by the state court are presumed to be correct absent clear and convincing evidence to the contrary. § 2254(e)(1).

The basis for Petitioner's first ineffective assistance of trial counsel claim is his belief that the trial court improperly utilized a prior conviction from the Habitual Felon Indictment to determine Petitioner's prior record level for sentencing. Under North Carolina law, convictions used to establish a person's habitual felon status may not be used in determining the person's prior record level. N.C. Gen. Stat. § 14-7.6 (West).

The Record on Appeal contained copies of Petitioner's Habitual Felon Indictment, the underlying judgments supporting Petitioner's habitual felon status, transcript of Petitioner's guilty plea to attaining habitual felon status, prior record level worksheet, and judgment and order of commitment. (R. on Appeal 39-59, Resp't's Ex. 2, Doc. No. 5-3.) In short, the Record on Appeal contained everything the appellate court needed to determine whether the trial court improperly used a prior conviction relied upon by the State to prove Petitioner's habitual felon status to also determine Petitioner's prior record level and, by extension, whether trial counsel was ineffective for failing to object.

Likewise, the Record on Appeal contained everything the appellate court needed to determine whether the trial court abused its discretion in finding that an aggravated sentence was justified and, by extension, whether trial counsel was ineffective for failing to object, as alleged in Petitioner's second claim of ineffective assistance of counsel. Specifically, Petitioner's transcript of plea to the habitual felon status, the trial court's Findings in Aggravation and Mitigation sheet, and the trial and sentencing transcripts were all part of the Record on Appeal. (R. on Appeal, supra, 21, 51, 58-59.)

As such, Petitioner has not presented clear and convincing evidence that the state court's finding that he was in an adequate position to raise his ineffectiveness claims on direct appeal was erroneous. See § 2254(e)(1); State v. Fair, 557 S.E.2d 500, 524 (N.C. 2001) ("[Ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required."). Consequently, Petitioner's ineffective assistance of counsel claims are procedurally defaulted unless he demonstrates "cause and prejudice" to excuse the default, or that a fundamental miscarriage of justice will occur if the court refuses to consider his claims. See Wright, 151 F.3d at 160.

Petitioner has done neither. In his Response to the Motion for Summary Judgment, Petitioner only addresses Respondent's merits analysis. (Doc. No. 7.) He does not address Respondent's procedural default defense. (Doc. No. 7.) Petitioner's ineffective assistance of trial counsel claims are procedurally defaulted on federal habeas review, and this Court will not review them on their merits.

### B. Substantive Change in Sentencing Law

Petitioner claims that he should benefit from retroactive application of a change in the North Carolina structured sentencing law. (Pet. 7, Doc. No. 1; Sept. 9, 2014 MAR, Resp't's Ex. 12 8-9, Doc. No. 5-13.) Respondent contends that this claim is procedurally defaulted for the same reasons that Petitioner's ineffective assistance of counsel claims are procedurally defaulted. (Mem. in Support of Summ. J. Mot., supra, at 17.)

Respondent is correct. As with the ineffectiveness claims, the state court's citation of § 15A-1419(a)(3) (October 17, 2014 Order Den. MAR, supra, at 42) constitutes an express reliance upon an adequate and independent state procedural rule as a basis for dismissing this claim. See Lawrence, 517 F.3d at 714.

Furthermore, Petitioner has not demonstrated with clear and convincing evidence that the state court's finding that he was in a position to raise this claim on direct appeal was erroneous. See § 2254(e)(1). Although Petitioner states that he did not raise this issue on direct appeal because it is "newly discovered" (Pet., supra, at 7), his argument is unavailing. Petitioner was represented by counsel on direct appeal, and the changes to the structured sentencing law were

made prior to Petitioner's March 2012 trial and subsequent appeal.[3] His attorney, therefore, was in an adequate position to raise this issue on appeal on Petitioner's behalf.

Consequently, Petitioner's claim is procedurally defaulted unless he demonstrates "cause and prejudice" to excuse the default, or that a fundamental miscarriage of justice will occur if the court refuses to consider his claims. See Wright, 151 F.3d at 160. While ineffective assistance of appellate counsel may serve as "cause" to excuse a procedural default, "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 488-89 (1986). Petitioner did not raise an independent claim of ineffective assistance of appellate counsel in the state courts. Moreover, he does not assert "cause and prejudice" on any grounds or that a fundamental miscarriage of justice will occur if the court refuses to consider his claim. Indeed, as was the case with his ineffectiveness claims, Petitioner does not address the procedural default issue at all.

Petitioner's claim is procedurally defaulted, and this Court will not review it on the merits. Summary judgment shall be granted to Respondent.

**IV.   CONCLUSION**

The claims raised in the instant Petition are procedurally defaulted. Therefore, the Petition shall be dismissed and summary judgment granted to Respondent.

---

[3] Although Petitioner does not identify the Structured Sentencing Act ("SSA") amendments at issue, it must be either the December 1, 2009 or December 1, 2011 amendments made pursuant to the Justice Reinvestment Act. Both of these SSA grid amendments apply only prospectively, i.e., for offenses committed on or after December 1, 2009 and on or after December 1, 2011. N.C.G.S. § 15A-1340.17 (2009) ("Effect of Amendments" prospective to December 1, 2009 only) and N.C.G.S. § 14-7.1 (2011) ("Editor's Note." amendments prospective to December 1, 2011 only).

## V. ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED AND DISMISSED**;

2) Respondent's Motion for Summary Judgment (Doc. No. 5) is **GRANTED**; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**            Signed: October 16,

Frank D. Whitney
Chief United States District Judge